UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE, et al.,<br><br>    Plaintiffs,<br><br>   v.<br><br>E. SCOTT PRUITT, et al.,<br><br>    Defendants. | Case No. 17-cv-03434-JSW<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 33 |

Now before the Court is the motion for summary judgment filed by Plaintiffs. The Court has considered the parties' papers, relevant legal authority, and the record in this case, and the Court finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the reasons stated below, the Court HEREBY GRANTS Plaintiffs' motion for summary judgment.

**A.    Background.**

Because the parties are familiar with the factual and procedural background contained in the administrative record, the Court provides only a brief summary.

In January 2017, the Environmental Protection Agency ("EPA") promulgated a rule which strengthened the regulations surrounding the certification and use of "restricted use pesticides" ("RUP"). ("Pesticide Rule") The Pesticide Rule had an effective date of March 6, 2017, and established a three-year implementation schedule which required States to submit certification plans consistent with the Pesticide Rule by March 4, 2020. *See* 40 C.F.R. § 171.5 (a), (b), (c). During this three year period, EPA was to work with the States and other pesticide certifying-authorities to develop revised certification plans to ensure compliance with the Pesticide Rule. Starting on January 26, 2017, however, the EPA abruptly reversed course and began delaying the

March 6, 2017 effective date of the Pesticide Rule, largely without notice and comment.[1] (*See* AR 100, 103, 105, 111.) In response, Plaintiffs, a number of farmworker unions and related advocacy groups, filed the instant action, seeking a declaratory judgment that (1) declares EPA's delaying of the Pesticide Rule failed to comply with the Administrative Procedures Act ("APA"), (2) vacates the EPA's various rules delaying the Pesticide Rule's effective date, and (3) declares the Pesticide Rule to be in effect.

## B. Plaintiffs' Have Standing to Challenge EPA's Delay.

The Court finds that Plaintiffs have standing to bring this declaratory judgment action. *See Thomas v. Mundell*, 574 F.3d 756, 760 (9th Cir. 2009) ("[s]tanding is a necessary element of federal-court jurisdiction" and a "threshold question in every federal case"). To establish Article III standing, a plaintiff must show it "(1) suffered injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Under the doctrine of associational standing, an association has standing to sue on behalf of its members when: "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Security*, 279 F. Supp. 3d 1011, 1034 (N.D. Cal. 2018).

Plaintiffs have suffered an injury in fact because EPA's delay of the Pesticide Rule's effective date has created a threat that implementation of the Pesticide Rule, and the regulatory protections it provides, will likewise be delayed. In promulgating the Pesticide Rule, EPA made numerous findings about the inadequacy of the current regulations related to RUPs and the threat RUPs posed to agricultural workers and others. (*See, e.g.*, AR 4-6, 11-14.) The farmworker union Plaintiffs have proffered undisputed evidence showing that their members mix, apply, and are

---

[1] On May 15, 2017 EPA proposed delaying the Pesticide Rule until May 22, 2018 and provided only four days for interested parties to provide comments. This is the only notice and comment period that was offered by EPA.

1    exposed to pesticides, including RUPs.  Plaintiffs' evidence also suggests that their members have

2    observed first hand problems with inadequate training and safety measures related to pesticides

3    generally.   (*See, e.g.*, Dkt No. 33-3, Nicholson Decl. ¶¶ 5-6; Dkt. No. 33-4, Ramirez Decl. ¶¶ 5-7;

4    Dkt. No. 33-6, Rios Decl. ¶¶ 7-9; Dkt. No. 33-7, Rojas Decl. ¶¶ 6-10.)  If implementation of the

5    Pesticide Rule is delayed, Plaintiffs' members will continue to be exposed to these dangers and

6    will not benefit from the more stringent regulations provided by the Pesticide Rule.  Further, those

7    Plaintiffs who engage in worker health and safety advocacy have averred that a delay in the

8    implementation of the Pesticide Rule will require them to commit more time and resources to

9    educating and informing their members and public about the dangers of  RUPs—resources which

10   otherwise could be devoted to its other goals. (*See, e.g.*, Dkt. No. 33-1, Economos Decl. ¶¶ 16-17;

11   Dkt. No. 33-2, Katten Decl. ¶ 24.)  Thus, either directly or through their members, Plaintiffs have

12   suffered an injury as a result of the delay of the Pesticide Rule.

13   EPA responds, however, that the delay of the Pesticide Rule's effective date did not affect

14   the rule's implementation schedule.  EPA contends that in the absence of additional rule-making

15   to alter the implementation schedule, States still will be required to submit their revised RUP

16   certification plans by March 2020.  Thus, according to EPA, Plaintiffs and their members will not

17   be deprived of the protections of the Pesticide Rule for any period of time as a result of the delay

18   of the rule's effective date.

19   The Court is unconvinced by EPA's assurances.  First, until quite recently, EPA

20   consistently stated that it intended to delay the actual implementation of the Pesticide Rule, not

21   just its effective date.  EPA's very purpose in delaying the effective date was to prevent States and

22   other regulated entities from making changes to comply with the Pesticide Rule while the rule was

23   being reviewed for potential revision or repeal.  (*See, e.g.*, AR 106, 112.)  Further, prior to the

24   filing of this lawsuit, EPA expressly stated that it "intend[ed] to make corresponding changes to

25   the implementation dates . . . in a subsequent rulemaking" contained in the Pesticide Rule.  (AR

26   113.)  Finally, Plaintiffs have introduced evidence that in November 2017—mere days after EPA

27   represented to this Court that the Pesticide Rule's implementation schedule was unchanged and

28   that Plaintiff's concerns to the contrary amounted to the "height of conjecture"—an EPA official

3

informed stakeholders that EPA intended to delay the implementation schedule by 14 months to correspond to the delay in the effective date. (*See* Dkt. No. 35-1 Liebman Decl. ¶ 4 & Ex. B; Dkt. No. 35-2, Jordan Decl. ¶ 4.)[2] EPA's actions and statements therefore demonstrate that Plaintiffs face a real, credible threat that implementation of the Pesticide Rule will be delayed as a result of EPA's delay of the effective date. *See, e.g.*, *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 950 (9th Cir. 2002) ("[A] credible threat of harm is sufficient to constitute actual injury for standing purposes . . . .").[3]

This threat is made more concrete when considered in light of the practical consequences of EPA's delay of the Pesticide Rule's effective date. Under the prior Administration, EPA determined, after extensive notice and comment, that the Pesticide Rule required a flexible, three year implementation schedule because EPA would have to "engage in open and transparent discussions and negotiations" with States to develop revised certification plans consistent with the Pesticide Rule. (AR 73.) Additionally, EPA noted that certifying authorities would have to "devote resources to additional training, manual development, exam development and review,

---

[2] The Court may consider this evidence, even though it is outside the Administrative Record, because it is offered in support of Plaintiffs' standing. *See, e.g.*, *N.W. Envmtl. Defense Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1528 (9th Cir. 1997).

[3] After Plaintiffs filed their reply brief and highlighted EPA's stated intention to delay the implementation schedule, EPA abruptly performed an about face and promulgated a notice declaring, in relevant part:

> EPA is also announcing that the implementation dates in [the Pesticide Rule] for certifying authorities to submit revised certification plans, and for EPA to act on those plans remain in effect; EPA has no plans to change those implementation dates. Therefore, if a certifying authority submits its modified certification plan by March 4, 2020, the existing approved certification plan remains in effect until EPA has approved or rejected the modified plan or March 4, 2022, whichever is earlier.

(Dkt. No. 37-1.) The Court finds this non-binding, made-during-litigation policy change does not vitiate Plaintiffs' standing. *Cf. In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1117 (C.D. Cal. Dec. 2008) ("The Court knows of no authority for the proposition that a defendant can defeat a plaintiff's claim on standing grounds through the unilateral offering of a remedy of the defendant's choosing.").

1   exam administration and other services" in order to bring their certification regime into

2   compliance with the Pesticide Rule.  (*Id.*)  Thus, EPA originally concluded, after extensive notice

3   and comment, that implementation of the Pesticide Rule would involve a long, ongoing

4   collaborative process between multiple governmental entities.  EPA's abrupt decision to delay the

5   effective date so as to prevent "confusion" and to keep States from "adopt[ing] new measures to

6   comply with" the Pesticide Rule has effectively prevented this process from even beginning.  (AR

7   106.)  Over one-third of the contemplated three year implementation period has now been lost to

8   delay.  Each week that passes without EPA and the States beginning the process of implementing

9   the Pesticide Rule makes it that much more likely that the rule cannot be implemented by March

10  2020 as originally intended.

11       In summary, EPA's actions have created a substantial risk that the entire implementation

12  of the Pesticide Rule, and the protections it would provide Plaintiffs and their members, will be

13  delayed.  *See In re Zappos.com, Inc.*, — F.3d — , 2018 WL 1189643 (9th Cir. Mar. 8, 2018) ("A

14  plaintiff threatened with future injury has standing to sue 'if the threatened injury is certainly

15  impending, or there is a substantial risk that the harm will occur.'" (citation omitted)).  This risk

16  can be alleviated, to a degree, by the declaratory judgment Plaintiffs seek.  Plaintiffs' therefore

17  have standing to challenge EPA's actions.[4]

18  **C.    EPA's Delay of the Pesticide Rule's Effective Date Violated the APA.**

19       In its opposition brief to Plaintiffs' motion for summary judgment, EPA does not attempt

20  to justify, either substantively or procedurally, its repeated delays of the Pesticide Rule's effective

21  date.  The Court has carefully reviewed the Administrative Record and finds that EPA violated the

22  Administrative Procedures Act ("APA") by failing to provide notice and opportunity to comment

---

[4] In the alternative, for the reasons stated in Plaintiffs' motion for summary judgment and reply brief, the Court finds that Plaintiffs have standing insofar as they have alleged a procedural injury resulting from EPA's failure to provide them with notice and an opportunity to be heard prior to delaying the Pesticide Rule's effective date.  *See Citizens for Better Forestry v. U.S. Dep't of Agriculture*, 341 F.3d 961, 969-70 (9th Cir. 2003) (discussing the standing requirements for plaintiffs alleging a procedural injury).  Plaintiffs are among the direct intended recipients of the added protections afforded by the Pesticide Rule.  They therefore had a concrete interest in participating in the APA rulemaking process for contemplated alteration or delay of that rule.  By depriving Plaintiffs of that opportunity, EPA has injured Plaintiffs.

before delaying the Pesticide Rule's effective date.

By repeatedly delaying the effective date of the Pesticide Rule, EPA engaged in substantive rulemaking and was thus required to comply with the requirements of the APA. *See, e.g.*, *Clean Air Council v. Pruitt*, 862 F.3d 1 (D.C. Cir. 2017) ("EPA's stay, in other words, is essentially an order delaying the rule's effective date, and this court has held that such orders are tantamount to amending or revoking a rule."); *see also FEC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ("The [APA] makes no distinction, however, between initial agency action and subsequent agency action undoing or revising that action."). The APA requires that EPA give interested persons notice and an opportunity to comment before promulgating any final rule. *See* 5 U.S.C. § 553(b), (c).

It is undisputed that when EPA delayed the Pesticide Rule in January, March, and June 2017, it did so without providing any notice or opportunity to comment. EPA justified this failure by relying on the "good cause" exception to the notice and comment requirements. *See, e.g.*, *California v. Health & Human Servs.*, 281 F. Supp. 3d 806, 824-25 (N.D. Cal. 2017) (discussing the good cause exception). EPA argued that "good cause" existed because more time was needed for "further review and consideration of new regulations" and confusion could result if the rule went into effect but was "subsequently substantially revised or repealed." (*See* AR 101, 103, 112.) The good cause, exception, however, is extraordinarily narrow and is reserved for situations where delay would do real harm. *See, e.g.*, *United States v. Valverde*, 628 F.3d 1159, 1164-65 (9th Cir. 2010). A new administration's simple desire to have time to review, and possibly revise or repeal, its predecessor's regulations falls short of this exacting standard. *Cf. Clean Air Council*, 862 F.3d at 9 ("Agencies obviously have broad discretion to reconsider a regulation at any time. To do so, however, they must comply with the [APA], including its requirements for notice and comment.").[5]

**D.   Conclusion.**

For the reasons stated above, Plaintiffs' motion for summary judgment is GRANTED.

---

[5] For the reasons stated in Plaintiffs' motion for summary judgment, the Court similarly finds that the four day notice and comment period offered prior to the May 22, 2017 delay was inadequate.

6

1   The final rules located in the following locations are VACATED to the extent they purport to delay the effective date of the Pesticide Rule:

> (1) 82 Fed. Reg. 8499-501 (Jan. 26, 2017)
> (2) 82 Fed. Reg. 14324-25 (Mar. 20, 2017)
> (3) 82 Fed. Reg. 22294-96 (May 15, 2017)
> (4) 82 Fed. Reg. 23148-50 (May 22, 2017)
> (5) 82 Fed. Reg. 25529-32 (June 2, 2017)

The Court further DECLARES that the Pesticide Rule went into effect on March 6, 2017. *See* 40 C.F.R. 171.5(a).

A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: March 21, 2018

_____
JEFFREY S. WHITE
United States District Judge

7